IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4. LUIS RENE ZAVALA-ACOSTA,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Andrea Surratt, Assistant United States Attorney, and defendant, LUIS RENE ZAVALA-ACOSTA, personally and through counsel, Miller Leonard, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

### I. PLEA AGREEMENT

This plea is pursuant to Fed. R. Crim. P. 11(c)(1)(A).

**A.**    **Defendant's Obligations**

    **1.**    **Count of Conviction**

The defendant agrees to plead guilty to Count Four of the Indictment, which charges a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (distribution and possession with intent to distribute 500 grams and more of methamphetamine and one kilogram and more of heroin).

The defendant also agrees to admit the forfeiture allegation contained in the

Indictment.

2.     **Waiver of Appeal**: The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria:  (1) the sentence imposed exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory Guidelines range as calculated based on offense level 35, or (3) the Government appeals the sentence imposed.  If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.  This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing Guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement.

3. **Forfeiture of Assets**

The defendant agrees to admit the forfeiture allegation contained in the Indictment.

**B. Government's Obligations:**

1. **Sentencing Recommendation**: In exchange for the defendant's plea of guilty, the Government agrees to recommend the Court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing. The Government agrees to recommend a sentence at the bottom of or below the Guidelines range as finally calculated by the Court.

2. **Dismissal of Count:** In exchange for the defendant's plea of guilty, the Government also agrees that, at the time of sentencing, it will move to dismiss Counts One and Two of the Indictment as to the defendant, LUIS RENE ZAVALA-ACOSTA.

## II. STATUTORY PENALTIES

The statutory penalty for the offense charged in Count Four of the Indictment is not less than 10 years but not more than life imprisonment; a $10,000,000 fine; not less than 5 years supervised release or more than life supervised release; and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## III. COLLATERAL CONSEQUENCES

3

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## IV. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant will plead guilty are as follows:

Count Four:

*First*: the defendant knowingly possessed a controlled substance;

*Second*: the substance was, in fact, a controlled substance;

*Third*: the defendant possessed the controlled substance with intent to distribute it, or did in fact distribute it; and

*Fourth*: the substance was least 500 grams of mixtures and substances containing a detectable amount of methamphetamine and at least 1 kg of mixtures and substances containing a detectable amount of heroin.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory Guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below

4

which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which do not contradict the facts to which the parties have stipulated and which are relevant to the Guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4 and 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4 Comm.

The parties stipulate to the following facts:

On April 25, 2019, co-defendants Craig Pearson and Luis Fabian Ortiz met a DEA agent acting in an undercover capacity (the "UC") for the purpose of selling a pound of methamphetamine to the UC. The UC gave Pearson $4,000 and Pearson and Ortiz drove to a nearby apartment complex to obtain the methamphetamine. Ortiz walked up to a particular apartment (the "Apartment") and returned to the truck with a bag containing methamphetamine. Pearson and Ortiz returned to where the UC was waiting and delivered the methamphetamine. Pearson and Ortiz were arrested. This methamphetamine was tested by a DEA laboratory and was 516.6 grams of 99% (+/- 4%) pure methamphetamine.

After Pearson and Ortiz gave the methamphetamine to the UC, agents conducted surveillance on the Apartment. During this surveillance, agents observed

5

an individual in a Nissan Altima arrive at and then, 10 minutes later, leave the apartment concealing something in his jacket. This car was stopped and searched and agents located 899.3 grams of 99% pure methamphetamine in the Altima.

The defendant, LUIS RENE ZAVALA-ACOSTA, was observed leaving the Apartment. When the ZAVALA-ACOSTA was arrested, he had a key to the Apartment on his person.

The Apartment was subsequently searched. Agents located 2,711.6 grams of heroin and 3,143.7 grams of 99% pure methamphetamine in the Apartment. Co-defendant Jesus Adrian Padilla-Echeverria was in the Apartment when it was searched. Padilla-Echeverria was arrested in the Apartment. ZAVALA-ACOSTA's ID was located in the Apartment in a small closet with some of the recovered drugs.

ZAVALA-ACOSTA and Padilla lived together in the Apartment. They used the Apartment to store drugs, which they then delivered to their boss's customers. ZAVALA-ACOSTA admits that the possessed with the intent to distribute the controlled substances listed in this plea agreement, but does not admit that he knew the quantity of the methamphetamine and heroin in the Apartment, and accordingly reserves the right to argue that he should not be held responsible for the entire quantity of drugs.

## VI. ADVISORY GUIDELINE COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory Guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory Guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

Offense Level:

A.   The Guideline application to Count Four is U.S.S.G. § 2D1.1.

B.   Pursuant to U.S.S.G. § 2D1.1(c)(1), the defendant is responsible for:

- 516.6 grams of 99% pure methamphetamine sold to the UC on April 25, 2019;
- 899.3 grams of 99% pure methamphetamine that were distributed to the driver of the Altima from the Apartment on April 25, 2019;
- 3,143.7 grams of 99% pure methamphetamine recovered from the Apartment on April 25, 2019 during execution of a search warrant; and
- 2,711.6 grams of heroin recovered from the Apartment on April 25, 2019 during execution of a search warrant

for a total of 4,559.6 grams of methamphetamine and 2,711.6 grams of heroin, which converts to 97,903.6 kg of converted drug weight.[1]

---

[1] It is the parties' understanding that this Court applies the methamphetamine mixtures and substances Guidelines as a variance in cases where the methamphetamine "actual" or "ice" Guidelines would otherwise apply. It is the parties' current estimate that, if the methamphetamine in this case was treated without regard to its purity, and assuming the defendant is responsible for all of the drugs in the Apartment, the defendant's base offense level would be 34, instead of 38. His total offense level would be 31 and his Guidelines range would be 108-135 months. If the § 2D1.1(b)(12) enhancement for maintaining a drug-involved premises does not apply, his total offense level would be 29 and his Guidelines range would be 87-108 months.

7

Accordingly, the defendant's base offense level is 38. The defendant reserves the right to argue that he is not responsible for all of this drug weight.

C. It is the Government's position that the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, and is eligible for a 2-level increase in his offense level pursuant to U.S.S.G. § 2D1.1 (b)(12). The defendant takes the position that this enhancement is not appropriate.

D. The defendant reserves the right to argue at the time of sentencing that he is eligible for a role reduction pursuant to U.S.S.G. § 3B1.2.

E. The parties agree that the defendant meets the criteria in U.S.S.G. § 2D1.1(b)(18) and is therefore eligible for a 2-level reduction in his base offense level.

F. The defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The defendant should also receive a decrease in the offense level by -1 for timely notifying the government of his intent to plead guilty pursuant to U.S.S.G. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

G. Accordingly, in the Government's view, the total offense level is 35. In the defendant's view, it is no more than 33.

<u>Criminal History</u>:

H. The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative. The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. The defendant further acknowledges that any

additional facts regarding the criminal history can greatly affect the final Guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

Guidelines Range:

I. The Guidelines range resulting from the estimated offense level of 35 and the estimated criminal history category I is 168-210 months' imprisonment. The Guidelines range resulting from an estimated offense level of 33 and criminal history category I is 135-293 months' imprisonment. Count Four would carry a mandatory minimum sentence of 120 months, except that the parties agree that the defendant meets the criteria in 18 U.S.C. § 3553(f) and may be sentenced without regard to the mandatory minimum.

J. The imprisonment range at offense level 35 could be from 168 (at the bottom of CHC I) to 365 (at the top of CHC VI). The imprisonment range at offense level 33 could be from 135 (at the bottom of CHC I) to 293 (at the top of CHC VI).

K. Pursuant to U.S.S.G. § 5E1.2, at an offense level of 35, the fine range for would be $40,000 to $10,000,000, and at an offense level of 33 it would be $35,000 to $10,000,0000, plus applicable interest and penalties.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the Guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the Guideline range precludes either party from asking the Court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory Guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VIII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements, side agreements, terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 10/16/19          *Rene Zavala*
                        Luis Rene Zavala-Acosta

Defendant

Date: 10/16/19

Miller Leonard
Attorney for Defendant

Date: 10/17/19

Andrea Surratt
Assistant U.S. Attorney

11