IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4. LUIS RENE ZAVALA-ACOSTA,

    Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT ZAVALA-ACOSTA'S PSR OBJECTIONS

---

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following response to defendant Luis Rene Zavala-Acosta's objections to the Presentence Investigation Report ("PSR") (Doc #137):

- <u>Paragraph 23 (sale of one ounce of meth to Barron-Villalobos)</u>: The Government has no reason to doubt Barron-Villalobos's veracity on this point, but also does not intend to rely on this fact in its sentencing recommendation.

- <u>Methamphetamine mixture & substances Guidelines</u>: The Government objects to the use of the meth mixtures and substances Guidelines in place of the meth "actual" or meth "ice" Guidelines for reasons already litigated in this and other cases.

- <u>Drug weight</u>: The defendant argues that he should not be held responsible for the following drugs: (1) 899.3 grams of methamphetamine that were distributed on April 25, 2019, from the stash house in which the defendant was residing and working in the drug business (the "Apartment"); (2) 3,143.7 grams of methamphetamine recovered from the Apartment while the defendant lived there; and (3) 2,711.6 grams of heroin

1

recovered from the Apartment while the defendant lived there.  Rather, he argues he should be held responsible only for the 516.6 grams of methamphetamine that were ultimately sold to the UC on April 25, 2019.  The defendant argues that because he was only involved in the conspiracy for three weeks, the total amount of drugs in the Apartment was not reasonably foreseeable to him.

The Government's position remains that the defendant should be held responsible for all of the drugs in the Apartment—and sold from the Apartment—on the day of the defendant's arrest.  The Guidelines comment cited in the defendant's objection to the PSR is inapposite.  In that example, the defendant is recruited specifically to distribute 500 grams of cocaine.  Here, the defendant was being groomed to take over Padilla-Echeverria's role in the organization.  Though the defendant did not (yet) have the authority to set prices or negotiate the sales, he was involved in all other aspects of the business.  For instance, the defendant:

- Came to Colorado Springs for the purpose of working for Pena in the drug business;
- Was living in the Apartment full-time with the drugs and his ID was located in the same closet as the drugs;
- Had a key to the Apartment in his pocket when he was arrested;
- Accompanied Pena and Padilla-Echeverria to pick up drugs on multiple occasions and bring the drugs back to the Apartment;
- Was involved in weighing the drugs once they were brought back to the Apartment;
- Delivered the drugs to customers (along with Pena and Padilla-Echeverria); and

- Remitted proceeds of the drug sales to others in the organization.

Even if the defendant could not have recited the exact weight of the drugs in the Apartment at the time of the arrest, he was aware that there was large amounts meth and heroin in the Apartment, and was a part of the organization tasked with acquiring, weighing, and selling those drugs.

Unlike Pearson and Ortiz who had contact with the Apartment only to purchase 516 grams of meth—and had no reason to know about the other drugs in the Apartment—Zavala-Acosta was directly responsible for the drugs in the Apartment. The entirety of the drug weight recovered on April 25, 2019 was reasonably foreseeable to this defendant.

- <u>Drug-involved premises</u>: The defendant agrees that the Apartment was used for the purpose of manufacturing or distributing a controlled substance. (Doc #137 p. 7). He argues, however, that because he did not "maintain" the Apartment, the two-level increase pursuant to U.S.S.G. § 2D1.1(b)(12) does not apply as to him. The commentary to the Guidelines provides some guidance: "Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises" U.S.S.G. § 2D1.1(b)(12) App. note 17.

As the First Circuit has noted, "it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." *United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015). Indeed, in *United States v. Jones*, the "maintain" component of the enhancement was deemed satisfied because the defendant "had a key, came and went

3

at will, . . . slept there whenever he pleased[,] . . . kept clothes and toiletries there[, and] controlled activities that took place at the apartment." *Id.* It is true that Pena, not Zavala-Acosta, was listed on the Apartment lease and paid the rent. Regardless of whether the defendant was on the lease or paid the rent, however, he still *lived* there. The Apartment was his home—his *only* home. He socialized there; did cocaine and drank there; and all of his belongings were there. He had a key to the Apartment, and came and went as he pleased (including on the day of his arrest, when he left with his friend Barron-Villalobos to get a meal).

For these reasons, and the reasons stated in the PSR, the Government's position is that the § 2D1.1(b)(12) enhancement is applicable to Zavala-Acosta.

- Minimal participant: The defendant argues that he is eligible for a 4 point reduction for being a minimal participant in the criminal activity, primarily based on the idea that he did not know the entire scope of the drug trafficking organization. While this may be true as far as it goes, he was not charged with being part of a drug trafficking organization that spans beyond the Apartment. In other words, Zavala-Acosta is being held responsible only for the drug activities that took place in and around the Apartment on April 25, 2019 and not for whatever else Pena and Padilla-Echeverria may have been involved in without Zavala-Acosta's knowledge. In *this* conspiracy, therefore, Zavala-Acosta's role was not minimal (or minor), for all of the reasons stated above in the paragraph addressing his responsibility for the entirety of the drug weight found in the Apartment.

4

Respectfully submitted this 14th day of February, 2020.

                    JASON R. DUNN
                    United States Attorney

By:   *s/ Andrea Surratt*
       Andrea Surratt
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0100
       e-mail:  Andrea.Surratt@usdoj.gov
       Attorney for the Government