IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4.  LUIS RENE ZAVALA-ACOSTA,

    Defendant.

**GOVERNMENT'S MOTION FOR DOWNWARD VARIANCE
AS TO DEFENDANT LUIS RENE ZAVALA-ACOSTA**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following position with respect to defendant Luis Rene Zavala-Acosta's sentencing. For the reasons that follow, the Government respectfully requests that the Court impose a downward variant sentence of 84 months' imprisonment.

<u>Facts and Procedural History</u>

As described in the Presentence Investigation Report ("PSR") and the plea agreement, after contact on social media, co-defendant Craig Pearson agreed to sell an undercover law enforcement officer a pound of methamphetamine. Ultimately, co-defendant Luis Fabian Ortiz brokered the methamphetamine deal, which occurred on April 25, 2019. Ortiz left Pearson's truck to purchase methamphetamine from an apartment ("Apartment") occupied by Jesus Adrian Padilla-Echeverria and Zavala-Acosta. Ortiz gave the methamphetamine to Pearson, who sold it to the undercover

1

officer.

After this transaction, Pearson and Ortiz were arrested. Officers also obtained a search warrant for the Apartment and located additional methamphetamine and heroin inside. Padilla-Echeverria and Zavala-Acosta were arrested following the search of the Apartment.

For his conduct, the defendant was charged in three counts of a four-count indictment. (Dkt # 37). In Count One, he was charged with conspiring with Pearson, Padilla-Echeverria, and Ortiz to distribute methamphetamine. He was charged in Count Two with conspiring with Padilla-Echeverria to possess with intent to distribute heroin. And he was charged in Count Four with possession of methamphetamine and heroin. On October 17, 2019, the defendant pled guilty to Count Four of the Indictment pursuant to a plea agreement. (Dkt #87). In the plea agreement, the Government agreed, among other things, to recommend a sentence at (or below) the low end of the Guidelines as calculated by the Court.

Zavala-Acosta has been in custody since his arrest.

### Guidelines Calculation

For the reasons stated in the plea agreement and the PSR, the Government's position is that Zavala-Acosta's offense level is 35. At criminal history category I, his Guidelines Range is 168-210 months' imprisonment.[1]

---

[1] Assuming the Court agrees with this calculation—prior to any variance based on the methamphetamine ice vs. mixtures and substances Guidelines—the Government will recommend a sentence of 84 months' imprisonment. If the Court's calculation—again, prior to any additional variances—results in a lower Guidelines range, the Government will, pursuant to its obligation in the plea agreement, recommend a sentence at or below that range as calculated by the Court.

## Application of the 18 U.S.C. § 3553(a) Factors

For the reasons discussed herein, the Government recommends that the Court sentence the defendant to 84 months' imprisonment—a sentence below Zavala-Acosta's Guidelines range.

### A. Nature and Circumstances of the Offense

In his sentencing statement, Zavala-Acosta makes the claim that he "was the least culpable of the four co-defendants charged in this case." (Dkt # 141, p. 4). The Government disagrees. Only Padilla-Echeverria is clearly more culpable than Zavala-Acosta. They served essentially the same role as it related to the drugs in the Apartment, but Padilla-Echeverria had been involved for longer than Zavala-Acosta. In the Government's view, Pearson and Ortiz are not more culpable than Zavala-Acosta. Certainly, they are differently culpable. And, if anything, the fact that Pearson and Ortiz engaged in a one-pound methamphetamine deal while Zavala-Acosta was involved in maintaining a stash house with many times that amount of methamphetamine and heroin makes him *more* culpable than Pearson and Ortiz.

At the time of the arrests, Zavala-Acosta was being trained to take over a portion of the drug business from Padilla-Echeverria, and was involved in every aspect of the drug business being run out of the Apartment. Though Zavala-Acosta was less culpable than Jesus Pena—the man who rented the Apartment so that Padilla-Echeverria and Zavala-Acosta could live there and tend to the drugs—he was involved in the business in numerous ways. For instance, the defendant:

- Came to Colorado Springs for the purpose of working for Pena in the drug business;
- Was living in the Apartment full-time with the drugs and his ID was located in the same closet as the drugs;

3

- Had a key to the Apartment in his pocket when he was arrested;
- Accompanied Pena and Padilla-Echeverria to pick up drugs on multiple occasions and bring the drugs back to the Apartment;
- Was involved in weighing the drugs once they were brought back to the Apartment;
- Delivered the drugs to customers (along with Pena and Padilla-Echeverria); and
- Remitted proceeds of the drug sales to others in the organization.

The fact that Zavala-Acosta had a circumscribed role in the Apartment—at least as compared to Pena—is true, as far as it goes. But he came to Colorado for the purpose of working in that stash house, and learning the drug business. Simply because he got caught a few weeks—instead of a few months, or few years—in does not mean that his role was not important. Moreover, he had no exit plan. The only reason Zavala-Acosta is not, today, living in the Apartment and selling drugs is because the DEA caught him early and put him in jail.

Nor does Zavala-Acosta have any excuse except greed. When he left Arizona for Colorado, he was working a lawful job. He claims that he never made any money off the instant offense (Dkt # 141, p. 4) but, surely, he intended to. Absent the allure of selling drugs for money, there was no other reason for him to leave his job in Arizona to come to Colorado to work for Pena. It is clear from this offense conduct that the defendant did not care who he hurt, or how dangerous drug trafficking is for himself and the community in which he resides. Rather, the draw of the lifestyle of a drug trafficker seemed to Zavala-Acosta to be more interesting and lucrative than working in a paint factory. (PSR ¶ 70). If anyone should have known better, it is this defendant, who claims that he has "witness[ed] first-hand the violence inflicted" by drug cartels in Mexico. (Dkt #141, p. 5).

4

*B. History and Characteristics of the Defendant*

The defendant rightly points out that he is a young man with no criminal history. On the one hand, this counsels in favor of leniency, as the defendant has seemingly managed to stay out of trouble until now. On the other hand—for his first offense, the defendant went all in. Unlike many defendants, the defendant's criminal history did not start out small and escalate. Instead, for his first offense, the defendant was caught living and working in a large-scale drug stash house.

The defendant also claims that he is an addict. Of course, being an addict is not an excuse for criminal behavior. Particularly since, in this case, the defendant's addiction cannot provide an excuse for his behavior. Had the defendant wanted to drink and drug himself to death in Arizona, he had perfectly legitimate employment that would have allowed him to do that. This is contrasted with defendant Ortiz's involvement in this offense. Ortiz brokered the deal for Pearson in exchange for heroin to feed his habit. Here, Zavala-Acosta was simply pulled by the allure of the easy money of drug dealing.

It is also true that the defendant has a chance to make a life and future for himself in Mexico. He will have a job when he returns home, and he seems interested in furthering his education. Though the defendant's history and characteristics counsel for a serious prison sentence, the Government agrees that some leniency is appropriate given his relative youth and his apparent desire to live a righteous life in Mexico.

*C. The need to avoid unwarranted sentence disparities*

Two defendants have been sentenced in this case: Ortiz, who received a 51-month sentence, and Pearson, who received a 120-month sentence (Pearson's

mandatory minimum).  Unlike this defendant, both Ortiz and Pearson have criminal histories, and Pearson's is particularly serious.  As noted above, however, it is the Government's view that Zavala-Acosta's conduct is more serious than Pearson's and Ortiz's.  Pearson and Ortiz were charged in this case with arranging a one-pound methamphetamine deal on one occasion.  Zavala-Acosta and Padilla-Echeverria were arrested in a stash house with many deals' worth of heroin and methamphetamine.  Balancing the seriousness of the conduct of each defendant with the various criminal histories, the Government believes a sentence of 84 months' imprisonment is appropriate for this defendant.

*D. A Downward Variant Sentence is Not Warranted For the Meth Guidelines*

The Government is aware of the Court's position on applying the methamphetamine mixtures-and-substances Guideline in place of the "ice" Guideline as a variance.  The Government objects to this practice for reasons that have been litigated in the past, and will not repeat those arguments here.

## Conclusion

The Government respectfully requests that the Court sentence the defendant to a sentence of 84 months' imprisonment to be followed by three years of supervised release.

Respectfully submitted this 27th day of February, 2020.

          JASON R. DUNN
          United States Attorney

By:   *s/ Andrea Surratt*
       Andrea Surratt
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0100
       e-mail:  Andrea.Surratt@usdoj.gov